IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JILL C. BARBER**,

      **Plaintiff,**

v.                                              Case No.: 3:14-cv-27349

**SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.**,

      **Defendant.**

**MEMORANDUM OPINION and ORDER**

Pending before the Court are James Heslep, Esquire, Steptoe & Johnson PLLC's Objection and Motion to Quash, (ECF No. 58), and Family Dollar Stores, Inc.'s Motion to Quash, or Modify, Plaintiff's Third-Party Subpoena, (ECF No. 61). Plaintiff has filed responses to both motions, and the movants have replied. Therefore, the motions are fully briefed and ready for resolution. The undersigned does not find it necessary to have a hearing on the motions. For the reasons that follow, the Court **GRANTS** the Motion to Quash the subpoena served on Mr. Heslep and **GRANTS, in part,** and **DENIES, in part,** the motion to quash or modify the subpoena served on Family Dollar Stores, Inc.

**I.**     **Introduction**

This civil action involves allegations of common law fraud and outrageous conduct related to the administration of a workers' compensation claim filed by Plaintiff. Plaintiff asserts that on September 24, 2012, while acting within in the scope of her employment with Family Dollar Stores, Inc. ("Family Dollar"), she was bitten by a brown

1

recluse spider. The spider bite caused a non-healing wound on Plaintiff's right forearm, which plagued her for over a year and required significant treatment. Plaintiff claims that the defendant, a third-party claims administrator working for Family Dollar, intentionally mishandled Plaintiff's workers' compensation claim, using deceptive and fraudulent tactics, deliberately delaying reasonable medical care for her wound, and maliciously denying her entitlement to temporary total disability benefits.

Plaintiff recently served two subpoenas to produce documents; one was served on James Heslep, an attorney with Steptoe & Johnson, PLLC, who acted as counsel for Family Dollar in Plaintiff's workers' compensation proceeding, and the other subpoena was served on Family Dollar. (ECF No. 58-1 at 4-8; ECF No. 61-2 at 1-6). The subpoena directed to Mr. Heslep requests the production of six categories of documents, all of which would have been collected or created secondary to Mr. Heslep's representation of Family Dollar in Plaintiff's administrative action. The subpoena served on Family Dollar requests the production of eleven categories of documents, some of which are specific to Plaintiff and some that more generally apply to Family Dollar's claims administration process and relationship to the defendant.

## II. Discussion

### A. Mr. Heslep's Subpoena

Mr. Heslep objects to producing any of the documents identified in the subpoena on the basis that they constitute his attorney work product or his privileged attorney/client communications. Mr. Heslep provided a privilege log, which lists and describes the responsive documents in his possession. A review of the privilege log substantiates that the documents withheld are privileged and protected.

Plaintiff does not dispute Mr. Heslep's contention that the documents are

2

attorney work product and confidential attorney/client communications. Instead, Plaintiff argues that the documents are not protected from discovery because they fall within the crime-fraud exception. The parties agree as to the relevant law governing their dispute, but they disagree as to whether Plaintiff has demonstrated an adequate factual foundation to trigger *in camera* review of the documents pursuant to the crime-fraud exception.

"The crime-fraud exception operates to remove the privilege attaching to communications between a client and his or her counsel that were made in furtherance of a fraudulent or criminal scheme." *State ex re. Allstate Ins. Co. v. Madden,* 601 S.E.2d 25, 36 (W.Va. 2004) (citing *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)). In addition, the crime-fraud exception may "nullify the protections afforded by the work product doctrine." *Id.* (citing *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 583 S.E.2d 80, 95 (2003)). "It is important to note, though, that the crime or fraud exception is traditionally a narrow one. In this manner, only a crime or a fraud upon the court will suffice to overcome the attorney-client privilege. Thus, when the fraud alleged bespeaks of tortious fraudulent conduct, rather than a true fraud upon the court, the crime or fraud exception does not operate to compel disclosure of the privileged communications." *Kessel v. Leavitt*, 204 W. Va. 95, 183, 511 S.E.2d 720, 808 (1998) (citing 1 Cleckley, § 5–4(E)(6)(a), at 579 (3d ed. 1994)).

In determining whether the exception applies and documents should be disclosed, the court must conduct a two-step analysis. At all times, the party asserting the crime-fraud exception carries the burden of establishing its applicability. *Madden,* 601 S.E.2d at 39. This burden is initially met with a "'showing of a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the

3

materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (internal citation omitted). Once the requisite showing is made by the asserting party, the court must decide whether to conduct an *in camera* review of the allegedly privileged and protected documents to determine if the exception indeed applies. *Id.* The decision to perform such a review rests within the sound discretion of the court; however, "the court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.* Obviously, if the asserting party fails to convince the court that *in camera* review is necessary, the analysis ends there. However, if the requisite factual showing is made, and the court decides to conduct an *in camera* review, the second step is for the court to determine if the documents reveal evidence establishing application of the exception.

Here, Plaintiff does not meet her initial burden to provide a factual basis sufficient to justify *in camera* review of Mr. Heslep's privileged documents. Although Plaintiff verifies certain factual allegations, the facts established do not lead to an objective, good faith belief that Mr. Heslep's documents will contain evidence supporting the crime-fraud exception. In other words, Plaintiff shows the existence of various facts pertaining to her workers' compensation claim, but does not construct a bridge leading from those facts to the conclusion that Mr. Heslep was probably retained, knowingly or unknowingly, to further a crime or fraud. Plaintiff alleges the following

4

facts supporting her assertion that the crime-fraud exception should overcome the attorney/client privilege and attorney work product protection that attach to Mr. Heslep's records:

1. On May 2, 2013, Plaintiff's treating physician suggested that Plaintiff receive hyperbaric oxygen therapy ("HBT") to speed wound healing at the site of her brown recluse spider bite.

2. Defendant's employee, Iryna Slotylo, refused to approve payment for HBT after receiving a report prepared by her consultant, Dr. Glenn D. Hamilton, indicating that HBT was not medically necessary. (ECF No. 58-1 at 9-10).

3. Dr. Hamilton's report contained numerous errors; the most important of which was his incorrect belief that Plaintiff used tobacco, alcohol, and illicit drugs. According to Dr. Hamilton, these "high risk co-morbidities" prevented would healing. (*Id.* at 10).

4. Ms. Slotylo knew that Dr. Hamilton's report contained these errors, because Ms. Slotylo had Plaintiff's medical records.

5. On December 17, 2013, another one of Plaintiff's treating physicians, a wound specialist, requested urgent approval from Ms. Slotylo, authorizing Plaintiff to consult with the Mayo Clinic to confirm or rule out the condition of pyoderma gangrenosum. According to the physician, pathology results from a punch biopsy of Plaintiff's wound site supported a diagnosis of pyoderma gangrenosum as the cause of Plaintiff's continuing wound complications. (ECF No. 63-8 at 2).

6. On March 4, 2014, Ms. Slotylo belatedly authorized the Mayo Clinic consultation. Prior to doing so, however, Ms. Slotylo engaged the services of another consultant, Dr. Chuanhang Jin, an Associate Professor at West Virginia University's

5

Department of Occupational Medicine. Dr. Jin also suspected that Plaintiff suffered from pyoderma gangrenosum and felt that this diagnosis needed to be investigated. Dr. Jin wrote a letter to Ms. Slotylo on February 24, 2014, suggesting that the Mayo Clinic consultation be conducted promptly, so that Plaintiff could receive the proper diagnosis and treatment. Dr. Jin further advised that pyoderma gangrenosum was an autoimmune disorder, and was not caused by the alleged spider bite. (ECF No. 63-11 at 4-5).

7. On March 7, 2014, Plaintiff hired a lawyer to represent her in the workers' compensation proceeding. The attorney subsequently notified Ms. Slotylo and Mr. Heslep that Plaintiff had already been evaluated at the Mayo Clinic in January, and the Mayo Clinic had concluded that Plaintiff did not have pyoderma gangrenosum. Plaintiff's lawyer advised that he expected a final report from the Mayo Clinic in a few days, but in the meantime, he sent Ms. Slotylo and Mr. Heslep some preliminary documents from the Mayo Clinic and some medical articles suggesting a connection between a brown recluse spider bite and pyoderma gangrenosum. (ECF No. 63-14 at 2-14).

8. Unbeknownst to Plaintiff or her counsel, while waiting for the final reports from the Mayo Clinic, the defendant requested a supplemental report from Dr. Jin.

9. On the afternoon of March 20, 2014, via electronic mail, Plaintiff's counsel forwarded to Ms. Slotylo and Mr. Heslep the final reports from the Mayo Clinic, confirming the Clinic's belief that Plaintiff did not have pyoderma gangrenosum; thereby, supporting her claim that the spider bite received during her employment with Family Dollar was the likely cause of the non-healing wound on her forearm. In light of the findings, Plaintiff's counsel requested authorization for additional treatments of Plaintiff's wound. (ECF No. 63-15).

10. The following day, Ms. Slotylo sent a letter to Plaintiff denying her claim for temporary total disability benefits on the basis of Dr. Jin's supplemental report, which was prepared March 18, 2014. In the report, Dr. Jin opined that Plaintiff's wound issues were related to pyoderma gangrenosum, and were not related to the alleged brown recluse spider bite. (ECF No. 63-16). Although the supplemental report indicated that it was based upon a review of additional records, Plaintiff alleges that she subpoenaed documents from the medical referral service that arranged Dr. Jin's expert review and found no evidence that records were provided to Dr. Jin after the first set was sent to her.

11. During the relevant time frame, Mr. Heslep was involved in the claim process and had multiple communications with Family Dollar and the defendant regarding Plaintiff's workers' compensation claim.

In light of these facts, Plaintiff argues that the denial of HBT therapy was based on a patently erroneous report, and the denial of temporary total disability benefits was an outrageous decision, based on fabricated opinions that Ms. Slotylo quickly obtained in an effort to resolve the claim before receiving the Mayo Clinic's results, which she knew would plainly contradict her denial decision. Although Plaintiff claims that the defendant's acts constitute "clear badges of fraud," (ECF No. 63 at 16), none of the materials supplied by Plaintiff demonstrates that the defendant or Family Dollar involved Mr. Heslep in making "a false statement or statements of material fact or law to a third person or the court for personal advantage." *Madden,* 602 S.E.2d at 473 (citing *Recht,* 583 S.E.2d at 96). Plaintiff speculates that Ms. Slotylo obtained "false" opinions from consultants in order to provide her a reason to deny Plaintiff's legitimate demands. However, Plaintiff fails to produce any deposition testimony from Dr. Hamilton, Dr. Jin,

7

or Ms. Slotylo supporting that inference. Similarly, Plaintiff produces no testimony, letters, or e-mails reflecting efforts by Ms. Slotylo or Mr. Heslep to influence the consultants' opinions, or encourage them to rush to judgment. Moreover, there is no evidence that false or misleading reports were ever submitted to the court in the administrative proceeding. Although Plaintiff "presumes" that Mr. Heslep reviewed her medical records, and "may have reviewed or commented about the medical record" in connection with Dr. Hamilton's report, and could have discussed the consultants' opinions with Ms. Slotylo, Plaintiff simply provides no concrete evidence to corroborate her beliefs. Indeed, Plaintiff fails to produce any evidence suggesting that Ms. Slotylo had something to gain by denying Plaintiff's claim, which is a valid question given that Ms. Slotylo worked for a third-party administrator, not for the insurer.

As an example of the type of factual foundation justifying *in camera* review of privileged documents under the crime-fraud exception, the undersigned points to *Mt. Hawley Ins. Co. v. Felman Production, Inc.,* 271 F.R.D. 125 (S.D.W.Va. 2010). In *Mt. Hawley Ins. Co.*, the party asserting the crime-fraud exception produced e-mail exchanges between Felman Production, Inc.'s ("Felman") Human Resources Manager, its attorneys, and a third party operations manager, which discussed how to best create after-the-fact documents that would validate an insurance claim. *Id.* at 137. Included in the e-mail exchange was a comment by the Human Resources Manager that Felman did not have sales contracts to substantiate the claim. Consequently, the Manager had asked customers to "back date" such contracts. The Manager then asked counsel for advice on what documents he should create to effectively support the claim. *Id.* The e-mail exchange in *Mt. Hawley Ins. Co.* provided *prima facie* evidence of Felman's intention to perpetuate a fraud, and its solicitation of counsel to assist it in that endeavor. In

8

contrast, in this case there is only conjecture, which is insufficient to warrant *in camera* review of privileged and protected documents. The undersigned will not invade the attorney/client privilege or attorney work product protection on supposition alone.[1]

### B. Family Dollar's Subpoena

### 1. Documents regarding communications with the defendant (category 1 documents)

The first category of documents sought in the subpoena are all those reflecting contacts between Family Dollar and the defendant related to Plaintiff's workers' compensation claim. Family Dollar objects on the basis of burdensomeness. In response, Plaintiff agrees to narrow the search by limiting the request to the "business e-mails of Family Dollar employees whose email addresses end with '@familydollar.com.'" (ECF No. 69 at 4). In its reply, Family Dollar continues to assert burdensomeness, although it does not provide the Court with any verified support for that assertion.

Federal Rule of Civil Procedure 45(d) sets forth the protections available to a person subject to or affected by a subpoena. In particular, Rule 45(d)(3) outlines when a court *must* quash or modify a subpoena, when it *may* do so, and when the court may direct compliance under specified conditions. In the context of discovery, "Rule 45 adopts the standards codified in Rule 26 which allows for the discovery of any matter 'not privileged, that is relevant to the claim or defense of any party' when the discovery request 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). As such, the

---

[1] To the extent Plaintiff contends that copies of medical records in Mr. Heslep's possession are not privileged or protected, the undersigned disagrees. The records that Mr. Heslep chose to collect, review, and maintain reflect that which his client shared with him and that which he otherwise decided to obtain in order to fulfill his duty to his client. Consequently, in this situation, Mr. Heslep's selection of medical records necessarily constitutes the fruit of attorney/client communications and/or work product.

same limitations to discovery requests found in Rule 26 should be applied to a subpoena served pursuant to Rule 45. *See, e.g., HDSherer LLC v. Natural Molecular Testing Corp,* 292 F.R.D. 305, 308 (D.S.C. 2013) ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (citing *Cook v. Howard,* 484 Fed.Appx. 805, 812 (4th Cir. Aug. 24, 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed[,] ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.")).

For good cause shown under Rule 26(c), the court may restrict or prohibit discovery that seeks relevant information when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). ). To succeed under the "good cause" standard of Rule 26(c), a party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D.Kan.2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D.Fla.2009) ("A party objecting must explain the specific and particular way in which a request is

10

vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome"). As with any demand to limit a document production, whether made under Rule 26 or Rule 45, the burden of proof rests with the objecting party to establish that "the challenged production should not be permitted." *HDSherer LLC,* 292 F.R.D. at 308 (citing *Finley v. Trent,* 955 F.Supp. 642, 648 (N.D.W.Va.1997)).

In addition, Rule 26(b)(2)(C) requires the court, on motion or on its own, to limit the frequency and extent of discovery, when (1) "the discovery sought is unreasonably cumulative or duplicative;" (2) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (3) "the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action;" or (4) "the burden or expense of the proposed discovery outweigh its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D. Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D. Md. 2010)). To insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Given that Family Dollar has not supplied a verified factual basis for its claim of burdensomeness (such as affidavits from Family Dollar's information technology

11

specialist), the undersigned **DENIES** its request to quash the portion of the subpoena seeking category 1 documents. Nevertheless, taking into consideration the statements of the parties, and the proportionality analysis, the Court modifies the subpoena to limit the scope of Family Dollar's search for responsive e-mails. Accordingly, Family Dollar is **ORDERED** to search the e-mail accounts of its ten (10) employees *most likely* to have communicated with the defendant regarding Plaintiff's workers' compensation claim.

### 2. Documents regarding communications with Mr. Heslep (category 2 documents)

The documents sought by Plaintiff in category 2 of the subpoena include privileged communications with Mr. Heslep and Mr. Heslep's work product. For the reasons stated above, the Court **GRANTS** Family Dollar's motion to quash this portion of the subpoena.

### 3. Contract documents between Family Dollar and the defendant (category 4 documents)

Family Dollar objects on the basis that its contract documents are proprietary and confidential. Moreover, Family Dollar contends that the documents are not relevant to the issues in dispute. To the contrary, the undersigned finds that the terms of the contract between Family Dollar and the defendant are relevant for some of the very reasons set forth by Plaintiff. (ECF No. 69 at 15). Plaintiff agrees to the entry of a protective order to guard the confidential and proprietary aspects of the contract documents. Therefore, the Court **DENIES** Family Dollar's motion to quash the portion of the subpoena seeking its contract documents. Family Dollar shall produce contract documents for the relevant time frame. The parties shall tender an executed copy of the protective order on the Court's website for entry, and the contract documents shall be subject to that order.

4. **Written policies pertaining to the defendant (category 5 documents)**

Family Dollar objects on the basis of relevance and confidentiality. To the extent Plaintiff seeks policies governing entities other than the defendant, the Court agrees that the request is overly broad and requires the production of irrelevant information. However, the policies governing the defendant's administration of claims for Family Dollar are relevant to Plaintiff's complaint in that she attacks the manner in which defendant administered her workers' compensation claim. Accordingly, the Court **GRANTS** Family Dollar's request to modify this category of documents and **ORDERS** Family Dollar to produce those policies pertaining to the defendant's administration of claims on behalf of Family Dollar during the relevant time period. The policies will be subject to the protective order to alleviate Family Dollar's concern regarding their proprietary and confidential nature.

5. **Categories 3, 7, 8, and 10 documents**

Family Dollar does not object to the production of these documents. Accordingly, to the extent they have not yet been produced, Family Dollar is **ORDERED** to produce them.

6. **Categories 6 and 9 documents**

Plaintiff has agreed to withdraw her request for these documents. Therefore, Family Dollar's motion to quash these categories is **GRANTED**.

7. **Defendant's liability insurance policy covering errors and omissions (category 11 documents)**

The undersigned agrees with Family Dollar that this request is more properly directed to the defendant. Consequently, the Court **GRANTS** Family Dollar's motion to quash the portion of the subpoena seeking the defendant's insurance policies and

13

declaration pages.

The Clerk is instructed to provide a copy of this Order to counsel of record, including counsel for Family Dollar Stores, Inc. and James Heslep.

**ENTERED:** October 16, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge