IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JILL C. BARBER,

               Plaintiff,

v.                                                CIVIL ACTION NO. 3:14-27349

SEDGWICK CLAIMS MANAGEMENT
SERVICES INC.,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is Defendant's Motion to Dismiss (ECF No. 67) and Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Reply to Response to Motion to Dismiss or for Oral Argument (ECF No. 75). For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 67) is **DENIED** and Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 75) is **GRANTED in part** and **DENIED in part.**[1]

**I.    Background**

---

[1] Although Plaintiff filed a Motion for Leave to File a Sur-Reply, the motion itself contained all of Plaintiff's substantive arguments. Plaintiff herself stated at the conclusion of her Motion "[t]he content of this motion represents all of the argument that Plaintiff would make in regard to that issue." ECF No. 75, at 2. In other words, Plaintiff circumvented L. R. Civ. P. 7.1(a)(7) by setting forth her actual argument within her Motion. Prior to the Court responding to Plaintiff's Motion, Defendant filed a Response Memorandum (addressing the substantive arguments in Plaintiff's Motion). ECF No. 77. Both Plaintiff's Surreply Motion and Defendant's Response were considered in the Court's consideration of Defendant's Motion to Dismiss; therefore, Plaintiff's Motion is granted with respect to the request to file a surreply even though no additional briefing will be considered (as Plaintiff already set forth her argument in the Motion itself and Defendant filed a Response). Plaintiff's Motion is denied with respect for her request for an oral argument. The briefs and pleadings already filed in this case were sufficient for the Court to rule upon Defendant's Motion to Dismiss.

Plaintiff alleges in the Complaint that on September 24, 2012, she was bitten by a brown recluse spider while working in the stock room at the Family Dollar Store in West Hamlin, Lincoln County, West Virginia. ECF No. 1, at ¶ 14. On September 28, 2012, she filed a worker's compensation claim as a result of the injuries she sustained from the bite. *Id.* at ¶ 15. Defendant Sedgwick Claims Management Services Inc. ("Sedgwick"), as third-party claims administrator for self-insured Family Dollar, authorized periodic payments of both indemnity for wage loss and medical benefits. *Id.* at ¶ 16. However, Plaintiff experienced severe complications from the wound and filed the abovementioned Complaint against Defendant on October 29, 2014.

Defendant moves to dismiss Count 1 and Count 2 of Plaintiff's Complaint at this juncture. Count 1 of the Complaint alleges a "First Act of Fraudulent Conduct" in which Plaintiff claims that on May 2, 2013, a wound care physician who was treating Plaintiff, Dr. Harrison, requested that Defendant approve hyperbaric oxygen therapy for Plaintiff's wound (due to the fact that it would not heal). *Id.* at ¶ 20. Defendant, however, denied this request, claiming that its peer review doctor, Dr. Hamilton, deemed the request for hyperbaric oxygen not medically necessary. *Id.* at ¶ 22. Plaintiff then received two Claims Administrator's Orders in May, 2013, denying the treatment, which incorporated Dr. Hamilton's report. *Id.* at ¶¶ 22, 23. The Orders referred to the Plaintiff as "a 47-year old male" and stated Plaintiff "has high risk of comorbidities to prevent wound healing including smoking, alcohol use, and illicit drug use as documented." *Id.* at ¶ 22.

Plaintiff contends that these allegations are false and that Dr. Hamilton, as well as Sedgwick's claims administrator, Iryna Slotylo, knew or should have known that these assertions were false based on the medical records that were provided to them. *Id.* at ¶¶ 25, 26. Additionally, despite Plaintiff's attempts to correct these errors by contacting Ms. Slotylo, Plaintiff alleges that Ms. Slotylo fraudulently relied on Dr. Hamilton's report to deny medical treatment, and then

allowed it to be presented to the West Virginia Office of Judges of the Worker's Compensation Division ("Office of Judges") and to remain in evidence while Plaintiff's protests were pending. *Id.* at ¶¶ 27, 28. Although Plaintiff settled her worker's compensation claims on July 28, 2014, she alleges that Defendant's actions unnecessarily delayed treatments for her wound causing pain, anxiety, and emotional distress. *Id.* at ¶¶ 33, 34.

Count 2 of Plaintiff's Complaint, alleges a "Second Act of Fraudulent Conduct" in which Plaintiff states that in the spring of 2013, one or more of her treating physicians suspected the possibility of a condition or diagnosis known as Pyoderma Gangrenosum ("PG"), as a contributing factor to the unresponsiveness of Plaintiff's arm to treatment. *Id.* at ¶ 37. On October 24, 2013, Defendant arranged an independent medical evaluation of Plaintiff by Dr. ChuanFang Jin, who opined that if Plaintiff was in fact suffering from PG, then her medical condition was not related to her work related injury. *Id.* at ¶ 38. Then, Plaintiff's wound care specialist, Dr. MacFarland, wrote a letter to Defendant indicating her suspicion that Plaintiff had underlying PG, advising Defendant "we find it prudent now for her to be seen at Mayo Clinic by a specialist for this condition and an appointment has been arranged for January 6, 2014," and requesting Defendant approve the appointment through worker's compensation. *Id.* at ¶ 40. Prior to receiving a reply from Defendant, Plaintiff spent several days at the Mayo Clinic undergoing a series of tests. *Id.* at ¶ 42. At the conclusion of the examination, the physicians who participated in the testing and evaluation told Plaintiff that, in their opinion, she did not have PG. *Id.* at ¶ 43. Although a full description of the findings and conclusions would not be available to Plaintiff for 6 to 8 weeks, the doctors at the Mayo Clinic provided Plaintiff with some of the laboratory reports that were available at the time. *Id*. On March 4, 2014, ten weeks after Plaintiff requested approval of her Mayo Clinic examination, Defendant authorized and approved her request. *Id.* at ¶ 44.

On March 10, 2014, Plaintiff's counsel provided his first notice of representation to Ms. Slotylo and attached the available medical records from Plaintiff's Mayo Clinic evaluation, indicating Plaintiff did not suffer from PG. *Id.* at ¶ 45. Then, on March 11, 2014, My Slotylo provided Dr. Jin with an "additional medical record, the hospitalization record in St. Mary's Hospital with admission on November 12, 2013 and discharge on November 23, 2013." *Id.* at ¶ 46. That same day, without re-examining Plaintiff, Dr. Jin issued a supplemental report to Defendant and concluded that Plaintiff's most likely diagnosis was PG. *Id*. Ms. Slotylo then rendered a Claim Decision denying further benefits to the Plaintiff because she suffered from PG. *Id.* at ¶ 47. This information was represented to the Office of Judges. *Id*.

Plaintiff claims that at the time Mr. Slotylo issued the Claim Decision, she knew and fully appreciated that:

1. Plaintiff had been evaluated at Mayo Clinic in January 2014, and had been determined not to be suffering from PG;
2. The St. Mary's Hospital records she had provided to Dr. Jin on March 11, 2013 did not definitively diagnose Plaintiff's condition as PG;
3. Dr. MacFarland was the attending or supervising wound care specialist overseeing the November 2013 hospitalization of Plaintiff and did not then definitively diagnose PG;
4. Dr. MacFarland had subsequently requested the Mayo Clinic evaluation (on December 17, 2013) to definitively evaluate whether or not Plaintiff had PG;
5. She had on March 4, 2014, belatedly approved Dr. MacFarland's recommendation for the evaluation by Mayo Clinic; and
6. Plaintiff through counsel had previously provided her with the laboratory reports from Mayo Clinic which did not diagnose PG.

*Id.* at ¶ 48. After issuing this Claim Decision, Ms. Slotylo did not approve any further medical treatment for Plaintiff. *Id.* at ¶ 50. As such, Plaintiff alleges that she was forced to obtain medical treatment on her own and at her own expense, and that, as in Count 1, Defendant's fraudulent behavior delayed her in obtaining proper medical treatment for her wound and caused her unnecessary pain, anxiety, and emotional distress. *Id.* at ¶ 51, 52.

## II.     Standard of Review

In Plaintiff's Response to Defendant' Motion to Dismiss, Plaintiff claims to unilaterally convert Defendant's Motion to Dismiss into a motion for summary judgement. Specifically Plaintiffs notes, "Plaintiff hereby introduces factual documents in opposition to Defendant's motion, thus converting it from a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56, as set forth in Rule 12(d), and as ultimately required by *Persinger* . . . ." ECF No. 71, at 1–2. Plaintiff cites no authority to support this contention. Rather, as Defendant points out, the Fourth Circuit has held that "a Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). As such, it is the Court's decision whether to include extraneous materials in its consideration. Because Defendant filed a motion to dismiss, did not address any matters outside the Complaint, and has not had the opportunity to present all material that would be pertinent to a motion for summary judgment, the Court will not consider Plaintiff's extraneous evidence at this time. *Tsai v. Md. Aviation*, No. 07-1511, 2008 WL 5424085, at *4 (4th Cir. Dec. 31, 2008)("Because the district court converted a straightforward motion to dismiss into one for summary judgment without giving plaintiff the 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56,' we reversed.")(quoting Fed. R. Civ. P. 12(b)(6)).

Defendant, however, concedes that it filed its 12(b)(6) motion untimely, as Defendant filed the Motion after its responsive pleading. However, Fed. R. Civ. P. 12(h)(2) provides that "[f]ailure to state a claim upon which relief can be granted . . . . may be raised . . . . by a motion under Rule 12(c)." As such, the Court will construe Defendant's Motion to Dismiss as a Motion for Judgment

on the Pleadings. The Fourth Circuit has indicated that the standard for motions made pursuant to Rule 12(c) is the same as the standard applied to motions made pursuant to 12(b)(6), noting the "distinction is one without a difference." *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). As such, the standard of review for a motion for judgment on the pleadings is set forth below.

To overcome a motion for judgment on the pleadings, a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). To survive a motion for judgment on the pleadings, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted). Finally, "[a]lthough for the purposes of a motion [for judgment on the pleadings] we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

Count 1 and Count 2 of Plaintiff's Complaint allege fraud under the *Persinger* doctrine. *Persinger v. Peabody Coal Co.*, 474 S.E.2d 887 (W. Va. 1996). The *Persinger* case was first presented to the West Virginia Supreme Court of Appeals through certified questions from the United States District Court of the Southern District of West Virginia. *Id.* at 889–90. In *Persinger*, plaintiff filed a claim with the West Virginia Workers' Compensation Fund over an alleged injury sustained on the job. *Id.* at 890. Plaintiff's employer, however, informed the Fund that it was unaware that the plaintiff had suffered any injury; therefore, the Fund denied plaintiff's claim. *Id.* at 891. The plaintiff, however, appealed this decision and was ultimately awarded benefits. *Id.* He then brought a civil action in the United States District Court for the Southern District of West Virginia at Beckley for fraud against his employer, alleging that the employer knew its representations to the Fund were false and misleading. *Id.*

The District Court certified questions to the Supreme Court of Appeals of West Virginia, requesting a determination as to whether an employee could maintain such a cause of action. The West Virginia Supreme Court ultimately determined that:

> West Virginia Code § 23-2-6 (1994) does not preclude an employee from maintaining a separate and distinct cause of action against an employer for damages as a result of the employer knowingly and intentionally fraudulently misrepresenting facts to the Workers' Compensation Fund that are not only in opposition to the employee's claim, but are made with the intention of depriving the employee of benefits rightfully due him.

*Id.* at Syl. 1. However, the Court also held that "[i]n recognizing the existence of this type of [fraud] action, we do not wish to open a Pandora's box of litigation, nor do we wish to infringe upon an employer's right to contest an employee's claim." *Id.* at 897. In other words, because an employer has a statutory right in a worker's compensation action to contest the compensability of an

employee's injury, the Court held that the *Persinger* cause of action was to be narrowly construed. *Id.* Specifically, it stated:

> In order for a plaintiff employee to prevail on the narrowly construed cause of action by the employee against an employer for fraudulent misrepresentation concerning the employee's workers' compensation claim, the employee must (1) plead his or her claim with particularity, specifically identifying the facts and circumstances that constitute the fraudulent misrepresentation, and (2) prove by clear and convincing evidence all essential elements of the claim, including the injury resulting from the fraudulent conduct. . . .If the pleadings or evidence adduced is insufficient to establish either of the two factors stated above, the trial court may dismiss the action pursuant to Rule 12(b) . . . .

*Id.* at Syl. 4.

Therefore, in accordance with the *Persinger* holding, Plaintiff here must allege all elements of her fraud claim with particularity in order to survive a motion for judgment on the pleadings. Thus, the Court will turn to the elements of fraud. The essential requirements of a fraud claim are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 139 S.E. 737, 738 (W. Va. 1927). The reliance element of a fraud claim (element 2) was later clarified in *Cobb v. E.I. duPont deNemours & Co.*, 549 S.E.2d 657 (W.Va. 1999) where the West Virginia Supreme Court held that "[a] plaintiff need not show that he or she personally relied upon the fraudulent act to succeed in a *Persinger* cause of action. Instead, the material and false reliance element in a *Persinger* action refers to the party to whom an employer conveyed false information." *Id.* at 661.[2]

This interpretation of the reliance element was decided when workers' compensation was

---

[2] As will be discussed infra, the landscape of workers' compensation in West Virginia has changed since the holding in *Cobb*. Therefore, even though the reliance in this case is not identical to the reliance discussed in *Cobb* (because the workers' compensation scheme has since changed), the reliance element of fraud is still met and the holding in *Cobb* does not warrant dismissal of Plaintiff's claims.

managed exclusively by the State of West Virginia. However, as Defendant points out, "from 2006 to 2008, one private entity, Brickstreet, provided an alternative plan to the state insurance fund." ECF No. 68, at 8. Then in 2008, the worker's compensation market in West Virginia opened up to private insurers. Neither party has provided the Court with a case applying *Persinger* in the current worker's compensation scheme involved in Plaintiff's case.

However, *Bowens v. Allied Warehousing Services., Inc.*, 729 S.E.2d 845 (W. Va. 2012) applies the *Persinger* doctrine in the context of a private insurer, Brickstreet, during the 2006-2008 period. Specifically in *Bowens*, although the private insurer was not a party to the case, plaintiff brought a fraud claim against a business, Allied, where he was injured working as a temporary employee. *Bowens*, 729 S.E.2d at 849–850. As in this case, plaintiff in *Bowens* had previously protested two Claims Administrator Orders before the Office of the Judges regarding this injury. *Br. of Resp't*, at 10–11. Plaintiff alleges that while his case was pending before the Office of the Judges, Defendant Allied provided his temporary employment agency with fraudulent records, and the temporary employment agency then submitted those records to the Office of the Judges. *Bowens*, 729 S.E.2d at 851. The Court applied the analysis as laid out in *Cobb*, ultimately holding that that because the Office of Judges did not rely on the allegedly fraudulent records, Plaintiff could not sufficiently plead a *Persinger* cause of action. *Id.* at 852.

However, it is important to point out that in *Bowens*, the allegedly fraudulent documents were not introduced until the case was before the Office of Judges, whereas here the allegedly fraudulent records were introduced to Ms. Slotylo before she issued the Claims Administrator Orders. In other words, in *Bowens*, the administrative agency was the decision maker who was provided with the allegedly fraudulent documents. Therefore, in accordance with *Persinger*, plaintiff needed to show reliance by the Office of the Judges. Here, the claims administrator for

Plaintiff's employer, Ms. Slotylo, was the decision maker who was provided with the allegedly fraudulent documents. Therefore, Plaintiff must show reliance by Ms. Slotylo in order to allege fraud claims in her *Persinger* causes of action. This interpretation is consistent with the West Virginia Supreme Court's interpretation in both *Persinger* and *Cobb*, where reliance was required by the Worker's Compensation Fund (the decision maker in the previous workers' compensation regime)[3].

Defendant argues that Plaintiff fails to plead the necessary reliance element of her alleged fraud claims because the Office of Judges did not rely on any allegedly fraudulent representations by the Defendant (as Plaintiff concedes that she later settled her claims before the Office of Judges rendered any decision). The Court disagrees. Rather, Plaintiff alleges the necessary reliance, not by the Office of Judges, but by the claims administrator, Ms. Slotylo, acting on behalf of the Defendant to make decisions regarding Plaintiff's claim. Plaintiff asserts that she was denied medical treatment and benefits by the adverse decisions made by Ms. Slotylo who knowingly relied upon false information. Although the Office of Judges made no determinations in this case, initial determinations were made by Defendant's employee acting within the authority of the Defendant as the employer's workers' compensation claims administrator. Therefore, Plaintiff's Complaint adequately pleads the reliance element of her fraud claims.

As such, Plaintiff does allege viable *Persinger* causes of action sufficient to survive a motion for judgment on the pleadings, as Counts 1 and 2 are sufficient to "state a claim to relief that is plausible on its face." *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, Defendant's

---

[3] Plaintiff also points out that "[i]t is noteworthy that in *Cobb*, the claim analyst, Mary Parsons, worked for the Workers' Compensation Division, and was not an Administrative Law Judge who would decide a protest. Her position then, under the old state fund system, was analogous to the position of Claims Analyst or Claim Administrator held by Iryna Slotylo who made the claim decision of which Plaintiff in the instant case complaints." ECF No. 71, at 18.

Motion for Judgment on the Pleadings regarding Counts 1 and 2 of Plaintiff's Complaint is DENIED.[4]

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 67) is **DENIED** and Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Reply to Response to Motion to Dismiss or for Oral Argument (ECF No. 75) is **GRANTED in part**[5] and **DENIED in part**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:  March 17, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE

---

[4] Defendant also argues that the allegations in Counts I and II of Plaintiff's Complaint are mischaracterized as fraud claims under the *Persinger* doctrine, but actually assert bad faith claims against the Defendant. The Court disagrees. The parties agree that Defendant, as a third party, cannot be subject to a bad faith claim, but the Complaint explicitly relies on *Persinger*.

[5] However, as mentioned infra, no additional briefing will be considered (as Plaintiff already set forth her argument in the Motion itself and Defendant filed a Response).