IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JILL C. BARBER,

           Plaintiff,

v.     CIVIL ACTION NO. 3:14-27349

SEDGWICK CLAIMS MANAGEMENT SERVICES INC.,
and MEDICAL EVALUATION SPECIALISTS, INC.,
a Michigan Corporation, dba MES SOLUTIONS,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Sedgwick Claims Management Services, Inc.'s Motion for Judgment on the Pleadings. ECF No. 241. For the following reasons, the Court **DENIES** Defendant's motion.

    **I.**    **Factual and Procedural Background[1]**

Plaintiff alleges in the Second Amended Complaint that she was bitten by a brown recluse spider while working at the Family Dollar Store in West Hamlin, Lincoln County, West Virginia on September 24, 2012. *Pl.'s Second Am. Compl.*, ECF No. 230, at ¶ 16. On September 28, 2012, she filed a worker's compensation claim as a result of the injuries sustained from the bite. *Id.* at ¶ 17. Defendant Sedgwick Claims Management Services, Inc. (Defendant), as a third-party claims administrator for self-insured Family Dollar, authorized periodic payments for indemnity

---

[1] The Court has explained the factual and procedural background in its Order denying Defendant's Motion to Dismiss (ECF No. 191), but because Plaintiff filed a Second Amended Complaint, the Court briefly summarizes the additional allegations contained therein. *See Pl.'s Second Am. Compl.*, ECF No. 230.

for wage loss and medical benefits for the injury. *Id.* at ¶ 18. Plaintiff suffered severe complications from the spider bite wound and subsequently filed the original Complaint in this action on October 29, 2014.[2] ECF No. 1. The lawsuit is based on allegations of common law fraud for the conduct of Defendant and Defendant MES Solutions,[3] which led to Plaintiff's initial denial of worker's compensation benefits.

In its Motion for Judgment on the Pleadings, Defendant argues that Plaintiff's first and second counts allege bad faith claims rather than claims of common law fraud allowed under *Persinger v. Peabody Coal Company*, 474 S.E.2d 887 (W. Va. 1996). In Count I, Plaintiff alleges a "First Act of Fraudulent Conduct" involving the denial of hyperbaric oxygen therapy due to false medical records that described Plaintiff as a male who smoked, drank alcohol, and used illicit drugs. The first count largely mirrors Count I from the original Complaint, explained fully in this Court's Order denying Defendant's Motion to Dismiss. *See Pl.'s Compl.*, ECF No. 1, at ¶¶ 19-36; *Mem. Opinion & Order*, ECF 191, at 2-3. As Defendant argues that "Plaintiff has included a significant number of additional allegations in the Second Amended Complaint which were not contained in the original Complaint" to justify its second dispositive motion,[4] the Court has thoroughly examined the differences between the two complaints and will review only the additional allegations here.

---

[2] The Second Amended Complaint was filed on May 23, 2016. ECF No. 230. The Second Amended Complaint corrected the name of Defendant MES Solutions in the Amended Complaint to its full name of Medical Evaluation Specialists, Inc. (Defendant MES Solutions). *See id.* at n.1.

[3] Defendant MES Solutions is alleged to be a third-party administrator that transmitted information and coordinated peer review for Defendant. *Pl.'s Second Am. Compl.*, ECF No. 230, at ¶ 12.

[4] Defendant's first dispositive motion to the Court was for a motion to dismiss, but the Court converted it to a motion for judgment on the pleadings because Defendant untimely filed the 12(b)(6) motion. *See Mem. Opinion & Order*, ECF No. 191, at 5.

The Second Amended Complaint provides more detailed allegations as to which of Defendant's employees engaged in which activities. Plaintiff alleges that Michelle Triggs served as Defendant's claims administrator who denied the requested hyperbaric oxygen therapy on May 29, 2013. *Pl.'s Second Am. Compl.*, ECF No. 230, at ¶ 25. The allegations regarding Dr. Glenn Hamilton's involvement further described his lack of medical licensing with the West Virginia Board of Medicine and his role with Defendant MES Solutions as a peer reviewer for Defendant. *Id.* at ¶ 26. Lou Ann Mariaini is named as Defendant's employee who allegedly reviewed Plaintiff's medical records, concluding that Plaintiff's alcohol, tobacco, and illicit drug use were documented. *Id.* at ¶ 27. Plaintiff alleges that Defendant MES Solutions performed a quality assurance review of the medical records received from Defendant but failed to detect the inaccuracies between the provided records and Plaintiff's medical history. *Id.* at ¶¶ 30-32 (also alleging alterations made to Dr. Hamilton's report). After receiving the claim denials dated May 22 and May 29 of 2013, Plaintiff allegedly contacted Lisa O'Neal, a third-party case worker used by Defendant, to inform her of the error. *Id.* at ¶ 36. O'Neal in turn contacted Triggs, who allegedly did not review the issue. *Id.* at ¶¶ 37-38. Plaintiff alleges that Attorney James Heslep, counsel to Defendant, advised Iryna Slotylo, Defendant's claims administrator, that he could not corroborate the findings that Plaintiff smoked, drank alcohol, or used illicit drugs, but Defendant allegedly ignored this advice. *Id.* at ¶ 40.

Small changes regarding who sent or reviewed certain documents were also made in the Second Amended Complaint, but these changes did not affect the overall claim for fraudulent conduct. *See id.* at ¶¶ 28 (records provided by MES Solutions rather than Slotylo); 29 (naming Triggs and Mariani as those who knew or should have known Plaintiff's medical records rather than Slotylo); ¶ 41 (Slotylo's supervisor, Tom Constance, added). Plaintiff also alleges that

actions taken by Defendant MES Solutions or Defendant's employees amounted to a civil conspiracy to deny Plaintiff's treatment. *See id.* at ¶¶ 34-35.

In Count II, Plaintiff alleges a "Second Act of Fraudulent Conduct" focusing on the possible diagnosis of Pyoderma Gangrenosum (PG). As the second count again mirrors Count II in the original Complaint, the Court only highlights the differences or additional allegations here. *See Pl.'s Compl.*, ECF No. 1, at ¶¶ 37-54; *Mem. Opinion & Order*, ECF 191, at 3-4. Plaintiff alleges that Slotylo requested an additional assessment by Dr. ChuanFang Jin, who provided an independent examination of Plaintiff, in February of 2014 to review medical records from St. Mary's Medical Center. *Id.* at ¶ 57. Dr. Jin responded that she did not have enough information to determine whether Plaintiff had PG. *Id.* Heslep allegedly spoke with Dr. Jin afterwards to inform her of the pathology report from November of 2013. *Id.* at ¶ 58. Plaintiff alleges that Slotylo requested another additional assessment in late February of 2014 to get a definitive diagnosis of PG, and Dr. Jin determined that Plaintiff had PG, which was unrelated to the spider bite. *Id.* at ¶ 59. Plaintiff further alleges that Slotylo knew that Dr. Jin had seen Dr. Dawn MacFarland's letter stating that she could not definitively diagnose Plaintiff with PG. *Id.* at ¶ 60. Soon thereafter, Defendant allowed Plaintiff to see a specialist at the Mayo Clinic to determine whether she had PG. *Id.* Plaintiff's counsel allegedly sent an email to Heslep, Slotylo, and Dr. Jin to provide the full report from the Mayo Clinic, which definitively determined that Plaintiff did not have PG. *Id.* at ¶ 63. However, Plaintiff alleges, Defendant did not appropriately weigh the evidence as required under West Virginia Code § 23-4-1g because Defendant ignored the Mayo Clinic report and proceeded to terminate Plaintiff's benefits. *Id.* at ¶ 64. Plaintiff additionally alleges that when Slotylo issued the Claim Decision, she knew and fully appreciated that Dr. Jin had not seen the Mayo Clinic report before issuing her diagnosis of PG, that the Mayo Clinic report

was authentic and accurate, and that Slotylo was supposed to weigh all the evidence before making a final decision. *Id.* at ¶ 66.

Again additional names were added to the Second Amended Complaint, but the additions did not affect the underlying claims. *See id.* at ¶ 61 (adding Heslep to having notice of Plaintiff's representation). Plaintiff also alleges a civil conspiracy to defraud Plaintiff's worker's compensation in this count as well. *See id.* at ¶ 68.

## II.     Legal Standard

In analyzing a party's motion for judgment on the pleadings pursuant to Federal Rule 12(c), the Fourth Circuit has indicated that the applicable standard is the same as a motion to dismiss pursuant to Federal Rule 12(b)(6), noting that the "distinction is one without a difference." *Burbach Broad Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). To overcome a motion for judgment on the pleadings, a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do

"not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and citations omitted). Finally, "[a]lthough for the purposes of a motion [for judgment on the pleadings] we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

### III.   Discussion

This Court has already made determinations of Plaintiff's Count I and II under its previous decision denying Defendant's Motion to Dismiss. *See Mem. Opinion & Order*, ECF No. 191. Although Defendant asserts that Plaintiff's additional allegations in the Second Amended Complaint further state a bad faith claim, the additional allegations still support Plaintiff's plausible claims under common law fraud. To make a valid claim under the *Persinger* doctrine, "the employee must (1) plead his or her claim with particularity, specifically identifying the facts and circumstances that constitute the fraudulent representation, and (2) prove by clear and convincing evidence all essential elements of the claim." *Persinger*, 474 S.E.2d at 899. The essential requirements of a fraud claim are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 139 S.E. 737, 738 (W. Va. 1927). In order to prove the second element of reliance, "[a] plaintiff need not show that he or she personally relied upon the fraudulent act to succeed in a *Persinger* cause of action. Instead, the material and false reliance element in a *Persinger* action refers to the party to whom an employer conveyed false information." *Cobb v. E.I. DuPont deNemours & Co.*, 549 S.E.2d 657, 661 (W. Va. 1999).

This Court has already determined that Plaintiff alleges the necessary reliance by the claims administrator to plausibly state a claim under the *Persinger* doctrine. Plaintiff is required to show reliance by Slotylo, who acted as the decision maker, in order to allege plausible claims of fraud. As explained in the Court's previous Order, Slotylo allegedly acted within the authority of Defendant as the claims administrator in making initial determinations of Plaintiff's worker's compensation claim. The fact that the additional allegations within the Second Amended Complaint could support a bad faith claim is irrelevant because Plaintiff explicitly refutes a cause of action under Chapters 23 and 33 of the West Virginia Code, and the additional allegations continue to support a common law fraud claim under the *Persinger* doctrine. *See Pl.'s Second Am. Compl.*, ECF No. 230, at ¶ 2. The differences between the Second Amended Complaint and the original Complaint only act to clarify which of Defendant's employees were involved and provide a framework for a possible claim against Heslep, the only additional outside party mentioned. Plaintiff does mention Chapter 23 when alleging the failure to properly weigh evidence as required in West Virginia Code § 23-4-1g, but the Court finds it plausible that this allegation serves only to show that Defendant deliberately ignored the Mayo Clinic report in accordance with its fraudulent scheme. At this stage, the Court only looks to whether Plaintiff's assertions can create a plausible claim under *Persinger*.

Defendant additionally argues in its second challenge that Plaintiff did not prove reliance by an *unknowing* third party. Defendant asserts that the spirit of *Persinger* is "to punish an employer who attempts to trick an administrative body." *Def.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings*, ECF No. 242, at 11. When the West Virginia Supreme Court of Appeals decided to create a common law fraud claim in *Persinger*, the court looked to other jurisdictions that confronted a similar issue. *Persinger*, 474 S.E.2d at 893-96. The overwhelming rationale

in permitting recovery was when "the injury giving rise to the cause of action is not suffered during the course of employment" and when "the employer's fraudulent misrepresentation of facts in an attempt to deprive an injured employee of benefits rightfully due him from a previous work-related injury is separate and distinct from any injury envisioned to be encompassed under workers' compensation laws." *Id.* at 896-97. There is no limitation in *Persinger* or its progeny that a common law fraud claim requires the existence of an unknowing third party. The prior cases based the *Persinger* claim on reliance by the Office of Judges, but as this Court already explained, Slotylo is alleged as the decision maker who was provided with the fraudulent documents in this case, and thus the Plaintiff must prove reliance by Slotylo. *Mem. Opinion & Order*, ECF No. 191, at 9-10. Defendant's reliance on the lack of an unknowing third party is a distinguishing fact without a difference, at least at this stage for judgment on the pleadings. Plaintiff has sufficiently alleged facts that rise "above the speculative level" in order to state a plausible claim. *Twombly*, 550 U.S. at 555 (citations omitted). Without definitive guidance that an unknowing party is absolutely necessary to maintain a *Persinger* claim, Count I and Count II of the Second Amended Complaint are sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570.

Defendant lastly argues that Plaintiff's claims are barred by West Virginia Code § 23-2C-21, stating that "[n]o civil action may be brought or maintained by an employee against a private carrier or a third-party administrator … *who violates any provision of this chapter or chapter thirty-three* of this code." W. VA. CODE § 23-2C-21 (2009) (emphasis added). As Defendant recognizes, the "statute applies only to violations of Chapters 23 and 33 of the West Virginia Code." *Def.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings*, ECF No. 242, at 13. The Court has already determined that Plaintiff makes a plausible claim for common law fraud under *Persinger*, which falls outside the statutory violations and thus outside the scope of the statute's

applicability. Defendant's reliance on *Wetzel v. Employers Service Corporation of West Virginia*, moreover, is misplaced because that plaintiff did not assert a common law fraud claim against the defendant. 656 S.E.2d 55 (W. Va. 2007). The court's explanation of the statute's expanse in that case, therefore, does not cover the common law fraud claim under *Persinger*. In fact, the court stated that *Persinger* was inapplicable to that case and did not mention that the statute would preclude such cause of action. *Id.* at 62. Therefore, the statute does not bar Plaintiff's claims for common law fraud against the Defendant and Defendant MES Solutions.[5]

### IV. Conclusion

Accordingly, Plaintiff's Second Amended Complaint maintains a plausible claim of relief against Defendants for common law fraud under the *Persinger* doctrine. Therefore, Defendant's Motion for Judgment on the Pleadings must be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 24, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE

---

[5] After the 2005 statute became effective, the West Virginia Supreme Court of Appeals still applied the *Persinger* doctrine, signifying that the statute does not bar the common law fraud claim. *See Bowens v. Allied Warehousing Servs. Inc.*, 729 S.E.2d 845, 852 (W. Va. 2012).