IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JILL C. BARBER,

                Plaintiff,

v.                                    CIVIL ACTION NO. 3:14-27349

SEDGWICK CLAIMS MANAGEMENT SERVICES INC. and
JAMES W. HESLEP,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions by Defendant James W. Heslep (Defendant). The first is a Motion to Dismiss the Third Amended Complaint or, in the Alternative, Motion for Summary Judgment (ECF No. 275).   The second is a Motion for Oral Argument (ECF No. 277) on the issue.   The Court finds the legal issues fairly and thoroughly presented in the briefing, and an oral argument on the same is unnecessary.   Therefore, the Motion for Oral Argument (ECF No. 277) is **DENIED**.   For the following reasons, the Court also **DENIES** Defendant's Motion to Dismiss.

I.      **Background**

This case concerns the alleged fraudulent activity and deception by Defendants when denying Plaintiff's worker's compensation claim for an injury stemming from a brown recluse spider bite that occurred while working at Family Dollar. [1]   Defendant Sedgwick Claims

---

[1] The Court has thoroughly discussed the background details of this case in other orders. *See Mem. Op. & Order*, ECF No. 191 (denying Defendant's Motion to Dismiss); *Mem. Op. & Order*, ECF No. 258 (denying Defendant's Motion for Judgment on the Pleadings).   The instant

Management Services, Inc. (Sedgwick) allegedly hired Defendant as an attorney to represent Family Dollar for the worker's compensation claim. *Pl.'s Third Am. Compl.*, ECF No. 268, at ¶ 1. Plaintiff alleges that Defendant acted as an agent, an attorney, and a counselor for Sedgwick by giving its claims administrators, specifically Ms. Iryna Slotylo, both legal and medical advice pertaining to Plaintiff's underlying worker's compensation claim. *Id.* at ¶ 12. Slotylo served as the claims administrator for Plaintiff's case and relied on Defendant's advice when deciding to terminate Plaintiff's benefits. *Id.* at ¶ 1.

Plaintiff's second count alleges fraudulent conduct involving reliance on false medical information diagnosing her with pyoderma gangrenosum (PG) that resulted in her terminated benefits. *Id.* at ¶¶ 46-71. The spider bite occurred in 2012, but Plaintiff experienced a strong reaction that caused severe complications. *Id.* at ¶¶ 14, 18. In 2013, doctors postured that the delayed recovery could be caused by an underlying diagnosis of PG, an autoimmune disease. *Id.* at ¶ 46. Plaintiff met with Dr. ChuanFang Jin for a diagnosis, but Dr. Jin could not definitively determine whether Plaintiff had PG. *Id.* at ¶ 47 n.9. Dr. Dawn L. MacFarland later examined Plaintiff and performed a punch biopsy of her right forearm. *Id.* at ¶ 48. The biopsy results showed differential diagnoses of PG, spider bite reaction, or traumatic ulcer formation. *Id.* Dr. MacFarland continued to treat Plaintiff and recommended that Plaintiff see a specialist at the Mayo Clinic for a definitive diagnosis of PG or lack thereof. *Id.* at ¶ 49. Although Slotylo failed to approve the request in time,[2] Plaintiff kept her appointment with the Mayo Clinic and had tests

motion only concerns Defendant Heslep's interaction with the case, specifically regarding Count II. The Court, thus, limits the background discussion here to the facts and counts alleged against Defendant.

[2] Slotylo eventually approved the request in March of 2014, ten weeks after the initial request. *Pl.'s Third Am. Compl.*, ECF No. 268, at ¶ 56.

conducted on her forearm.   *Id.* at ¶ 51.   The doctors told Plaintiff that preliminary results did not

show PG, but a definitive report would take up to eight weeks to finalize.   *Id.* at ¶ 52.

Slotylo gave Plaintiff thirty days, starting on March 4, to prove that she did not have PG

by providing an expert's report.   *Id.* at ¶ 60.   Plaintiff's counsel emailed the initial report and

findings to Slotylo and Defendant on March 10, 2014, stating that "the attached test results clearly

demonstrate that Ms. Barber (Plaintiff) does not have (PG)."   *Id.* at ¶ 57.   Shortly after receiving

this email, Slotylo allegedly received Dr. Jin's second addendum report concluding that Plaintiff

did have PG.   *Id.* at ¶ 58.   Dr. Jin had not re-examined Plaintiff to make this determination and

allegedly based the diagnosis off the same information Dr. Jin used when she could not make a

definitive PG diagnosis.   *Id.* at ¶ 58.   On March 19, 2014, Plaintiff's counsel sent the full report

from the Mayo Clinic and a medical journal article on the relationship between brown recluse

spider bites and PG.   *Id.* at ¶ 59.

Plaintiff alleges that Defendant and Sedgwick, acting through the claims administrators

involved, independently or through conspiracy chose to ignore the Mayo Clinic Report and

terminate Plaintiff's worker's compensation benefits based on the faulty medical diagnosis of PG.

*Id.* at ¶ 60.   Defendant sent an email to Plaintiff's counsel and Slotylo falsely representing that the

Mayo Clinic Report supported Plaintiff's diagnosis of PG rather than disputed it.   *Id.* at ¶ 61.

Defendant also allegedly emailed Slotylo to discuss the initial laboratory reports, stating that

Plaintiff "had a classic case of PG."   *Id.*   Although Slotylo gave Plaintiff until April 4, 2014 to

provide an expert report on a definitive diagnosis, the claim's denial was issued on March 24,

2014.   *Id.* at ¶¶ 60, 63.   Plaintiff alleges that Sedgwick relied on Defendant's false representations

of the Mayo Clinic Report and initial laboratory results when denying Plaintiff's claim.   *Id.* at

¶ 62.   Specifically, Plaintiff highlights that when the claim's denial was issued, both Slotylo and

Defendant knew and understood that Plaintiff's Mayo Clinic Report concluded that she did not have PG, that the previous medical records supplied to Dr. Jin did not definitively diagnose PG, that Dr. MacFarland could not definitively diagnose PG, that Dr. Jin did not use the Mayo Clinic Report in her final diagnosis, and that the claim's decision was not based on a proper weighing of the evidence as required.   *Id.* at ¶ 64.

The allegations continue in that Defendant allegedly issued, or caused to be issued, a fraudulent claim decision that was based on false assertions of fact and erroneous opinions.   *Id.* at ¶ 65.   Defendant and his legal assistant, Mr. Paul Thomas, are alleged to have acted in a civil conspiracy with Sedgwick to defraud Plaintiff of her worker's compensation benefits by ignoring medical evidence that opposed the diagnosis of PG.   *Id.* at ¶ 66.   As a result of this fraudulent conduct, Plaintiff's medical treatment was delayed, and Plaintiff suffered unnecessary pain and discomfort as a result.   *Id.* at ¶ 69.   Although Plaintiff relied on her worker's compensation benefits, Slotylo refused to approve further medical treatment for Plaintiff's injuries, and Plaintiff had to seek medical treatment on her own to find a successful treatment.   *Id.* at ¶¶ 67-68.   In Count III, Plaintiff further specifies that Defendant's "actions and/or omissions, as foresaid, were intentional, deliberate, willful …."   *Id.* at ¶ 74.

Plaintiff filed suit against Sedgwick on October 29, 2014 for fraudulent activity and oppressive conduct.   *Pl.'s Compl.*, ECF No. 1.   In its Answer, Sedgwick asserted a defense of relying on the advice of counsel for the allegations in Count II.   *See Def.'s Answer to Second Am. Compl.*, ECF No. 238, at 6.   This asserted defense eventually led Plaintiff to include Defendant in the litigation by a Stipulation Allowing Third Amended Complaint.   ECF No. 267.   Plaintiff added Defendant on January 5, 2017, and Defendant shortly thereafter filed the instant motion to dismiss.   *See Pl.'s Third Am. Compl.*, ECF No. 268.

## II.      Legal Standard

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief."   Fed. R. Civ. P. 8(a)(2).   To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must also be plausible.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).   This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Id.* at 555 (internal quotations and citations omitted).   A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).   Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citation omitted).

When a complaint makes a claim for fraud, the plaintiff also must meet the heightened pleading standards set forth in Federal Rule 9(b).   "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).   The Fourth Circuit has held that a sufficient claim for fraud must state "the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby."   *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (citations and internal quotations omitted).   However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed. R. Civ. P. 9(b).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level …."   *Twombly*, 550 U.S. at 555 (citations omitted).   If the allegations in the complaint, assuming their truth, do

"not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted). Finally, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

### III.    Discussion

Defendant's motion to dismiss challenges the sufficiency of allegations in Count II. Defendant argues that the Court's recognition of the application of *Persinger*'s common law fraud claim to Sedgwick does not apply to Defendant because his involvement was based on his capacity as counsel. *See Def.'s Mem. of Law in Supp.*, ECF No. 276, at 1. Therefore, Defendant argues that Plaintiff must defeat the absolute litigation privilege set out in *Clark v. Druckman* by pleading a claim for actual fraud. *Id.* Plaintiff argues that the claims against Defendant, which include conspiracy and oppressive conduct, involve his role not only as an attorney but also as an agent to Sedgwick. *See Pl.'s Resp.*, ECF No. 278, at 1. However, even under the *Druckman* standard, Plaintiff asserts that the Third Amended Complaint contains sufficient allegations to survive a motion to dismiss. *Id.* at 13-14.

The Supreme Court of Appeals of West Virginia established in *Clark v. Druckman* that an attorney does not owe the opposing party of a civil lawsuit a duty of care that would hold the attorney liable for negligence. 624 S.E.2d 864, 868 (W. Va. 2005). Creating a duty in negligence would create conflicts of interest preventing an attorney from zealously advocating on behalf of the attorney's own client. *Id.* at 869. Therefore, attorneys have an absolute litigation privilege that prevents them from being the subject of a subsequent suit from an adverse party.

-6-

*Id.* at 870.   The litigation privilege extends to both written and oral communications made by an attorney during judicial and quasi-judicial proceedings.   *Barefield v. DPIC Cos., Inc.*, 600 S.E.2d 256, 271 (W. Va. 2004) (Davis, J., concurring); *Parker v. Appalachian Elec. Power Co.*, 30 S.E.2d 1, 4 (W. Va. 1944).   However, this absolute privilege does not extend to acts of fraud or malicious prosecution.   *Druckman*, 624 S.E.2d at 872.   The *Druckman* court relied on a California court decision, which stated, "[a] fraud claim against a lawyer is no different from a fraud claim against anyone else.   If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability."   *Id.* at 870 (quoting *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 291 (Cal. Ct. App. 2004)).

Therefore, in this case, Plaintiff has to allege that Defendant engaged in actual fraud to maintain a plausible cause of action against Defendant in his capacity as an attorney.   Generally, fraud includes "all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another."   *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 682 (W. Va. 1981).   Actual fraud is an intentional act to deceive another person of that person's property rights.   *Id.* at 682-83.   In addition to the intentional element, a plaintiff must prove the essential elements of fraud: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it."   *Lengyel v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981).

In challenging the sufficiency of pleading under Federal Rule 12(b)(6), Defendant argues that Plaintiff failed to allege that Defendant intended to defraud Plaintiff and that Plaintiff personally relied upon the false representations.   *Def.'s Mem. of Law in Supp.*, ECF No. 276, at

2.   Plaintiff argues that the factual allegations in the complaint support Defendant's intent to cause harm to Plaintiff by communicating false information and that Plaintiff relied on the overall fair weighing of evidence, which Defendant intentionally failed to follow.   *Pl.'s Resp.*, ECF No. 278, at 17.

Assuming that only *Druckman* applies and not *Persinger*, the Court finds that Plaintiff has successfully pleaded sufficient allegations to support a claim for actual fraud, even under the heightened pleading standards in Federal Rule 9(b).[3]   The Federal Rules require allegations of fraud to include specifics detailing the circumstances of the fraudulent conduct.   The Fourth Circuit further clarified this standard by requiring information on the time, place, contents, and speaker of the false representations.   Plaintiff's complaint includes sufficient detail to provide a particularized understanding of the alleged fraud.   Plaintiff identifies two emails sent by Defendant that directly impacted Plaintiff's denied worker's compensation claim.[4]   Defendant sent the first to Slotylo and Plaintiff's counsel to allegedly report false information within the Mayo Clinic Report, stating that the report supported a finding of PG.   Defendant's second email was sent only to Slotylo but contained allegedly false information on the initial laboratory results showing a classic case of PG.   These emails showcase the time, contents, and speaker as required to sustain a claim for fraud under Rule 9(b).   Although Defendant also challenges the lack of identified intent, the Federal Rules require only general pleading for such details.   The Court is satisfied that the list of information that Defendant allegedly knew and understood before sending

---

[3] As the Court is satisfied with the sufficiency of the pleading under a *Druckman* analysis, the Court need not determine whether Plaintiff could sustain a claim against Defendant as an agent of Sedgwick based on *Persinger*.   *See Persinger v. Peabody Coal Co.*, 474 S.E.2d 887 (W. Va. 1996).

[4] Defendant highlights the fact that Plaintiff points only to two emails in support of fraudulent conduct.   *Def.'s Mem. of Law in Supp.*, ECF No. 276, at 4.   The Court finds this detail insignificant as one fraudulent statement or action could be enough to support a claim.

the false representations demonstrates intent.   *See Pl.'s Third Am. Compl.*, ECF No. 268, at ¶ 64; *see also Henry v. Synchrony Bank*, Civ No. 3:16-5999, 2016 WL 6871269, at *3 (S.D.W. Va. Nov. 21, 2016) (finding allegations that defendant knew of false information enough to satisfy intent for fraud).   Moreover, Count III, although alleging a separate cause of action, relies upon the same facts in Count II and states directly that Defendant's "actions and/or omissions, *as foresaid*, were intentional, deliberate, willful …."   *Pl.'s Third Am. Compl.*, ECF No. 268, at ¶ 74.   Although the Court would appreciate more specific pleading in Count II to allege intent directly, the factual allegations contained within the complaint are enough to satisfy the general pleading standard for motive and intent.   Therefore, the Court finds that Plaintiff has satisfied the requirements of heightened pleading under the Federal Rules to make a claim for fraud plausible.

Apart from the federal pleading standards, the Court finds that Plaintiff also sufficiently pleads a cause of action for fraud under West Virginia precedent.   *See Pocahontas Mining Co. Ltd. P'ship v. Oxy USA, Inc.*, 503 S.E.2d 258, 263 (W. Va. 1998) (Workman, J., concurring) ("The pleading, however, is only held to the standard of Rule 9(b) and the accompanying case law."). West Virginia courts consistently compare a plaintiff's factual allegations in the complaint to the elements of fraud before allowing a cause of action to continue.   The purpose of requiring specific information during the pleading process "is both to allow the party alleged to have committed fraud to defend such charges and to permit the tribunal hearing the matter to conduct a full review of the complaining party's claims."   *Kessel v. Leavitt*, 511 S.E.2d 720, 757 (W. Va. 1998). However, the pleadings do not have to include a specific listing of the elements of fraud; instead, courts have interpreted the higher pleading standards "to require only the pleading with particularity, rather than an exhaustive narration of every facet of proof which will later be adduced in the action for fraud."   *Pocahontas Mining Co.*, 503 S.E.2d at 263 (Workman, J., concurring).

Accordingly, courts have deemed complaints "sufficient so long as a cause of action for fraud may be discerned from the allegations contained therein."   *Kessel*, 511 S.E.2d at 757.

Here, Defendant's main challenge focuses on Plaintiff's failure to allege that she relied on Defendant's fraudulent conduct.   *Def.'s Mem. of Law in Supp.*, ECF No. 276, at 15.   The Court is satisfied that reliance can be discerned from the factual allegations contained within the complaint.   Plaintiff details the emails that Defendant sent containing allegedly fraudulent information regarding Plaintiff's medical records.[5]   Due to Defendant's fraudulent representation about the medical diagnoses, Slotylo terminated Plaintiff's worker's compensation benefits, which caused Plaintiff to seek medical treatment on her own after months of delay.   Plaintiff alleges that Defendant was intricately involved in the decision-making process and that Sedgwick relied on Defendant's representations when making the final decision to terminate Plaintiff's benefits. Plaintiff's allegations certainly meet the purpose of pleading fraud with particularity as Defendant can adequately defend the alleged fraudulent conduct.   Although Plaintiff does not particularly allege within the complaint that she relied personally on Defendant's statements, the factual allegations support Plaintiff's argument that she relied on a fair claims process that weighed all of the evidence submitted.   *See Pl.'s Resp.*, ECF No. 278, at 17; *Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 516 (W. Va. 2007) (maintaining fraud claim when complaint notified opposing party of fraudulent actions even if not articulated clearly).   The Court need not require

---

[5]   The Court also reviewed and considered these specific emails and the Mayo Clinic Report as they were referenced in detail within the complaint.   *See Email dated Mar. 21, 2014*, ECF No. 275-4; *Mayo Clinic Report*, ECF No. 275-5; *Email dated Mar. 11, 2014*, ECF No. 278-9; *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("a court may consider [documents] in determining whether to dismiss a complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.").   Two of these documents were provided by Defendant and one by Plaintiff, but the Court finds that all documents appear authentic and are directly referenced in the complaint.

a complete narration of facts to support each element of fraud as long as the factual allegations in the complaint support a plausible finding for fraud.   *See Bowen v. Allied Warehousing Servs., Inc.*, 729 S.E.2d 845, 853-54 (W. Va. 2012) (dismissing fraud claim when complaint contained no factual allegations of role in decision or to support injury based on justifiable reliance).   It is plausible here that Defendant was involved in the decision-making process to the extent that his fraudulent representations directly resulted in the termination of benefits and that reliance can be shown through the failure of the claims process following regular procedure.

Defendant argues that this Court's holding in *Ghafourifar v. Community Trust Bank, Inc.* requires dismissal here because that complaint also did not allege personal reliance.   *See Def.'s Mem. of Law in Supp.*, ECF No. 276, at 16; *Ghafourifar v. Cmty. Tr. Bank, Inc.*, Civ. No. 3:14-1501, 2014 WL 4809794 (S.D.W. Va. Sept. 26, 2014).   However, the plaintiff in that case alleged that the attorney attempted to defraud the bankruptcy court, whereas Plaintiff here alleges that Defendant intended to defraud Plaintiff.   *Ghafourifar*, 2014 WL 4809794, at *7.   The factual allegations in the complaint of the instant case are more detailed than those in *Ghafourifar* and justify a different result here.   The Court is satisfied that Plaintiff has met her burden at this stage in the litigation.

Therefore, the Court finds that Plaintiff has sufficiently pleaded a cause of action for fraud against Defendant, and the Court does not need to address the arguments for civil conspiracy brought up in Plaintiff's Response.[6]   Taking Plaintiff's factual allegations as true, the Court finds

---

[6] The Court will note, however, that a "civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."   *Kessel v. Leavitt*, 511 S.E.2d 720, 754 (W. Va. 1998). Plaintiff alleges that Defendant acted in a civil conspiracy with Sedgwick's agents to defraud Plaintiff.   As the Court previously determined that Count II adequately pleaded fraud against Sedgwick under a *Persinger* analysis, the door is at least open to hold Defendant liable for the conduct as well.   *See Mem. Op. & Order*, ECF No. 191; *Kessel*, 511 S.E.2d at 754 ("everyone

that Plaintiff's claims state a plausible cause of action to pass the motion to dismiss standard.   The Court, thus, **DENIES** Defendant's Motion to Dismiss (ECF No. 275).   Defendant also raises the motion in the alterative for a Motion for Summary Judgment.   Both parties submitted exhibits to support their positions on whether fraud occurred.   However, the Court finds a motion for summary judgment premature as discovery remains open until July 2017 pursuant to the Amended Scheduling Order (ECF No. 266), and Defendant just entered the case as a party.   The Court ruled on the motion to dismiss with reliance only on the complaint and the documents explicitly relied upon in the complaint.   The other exhibits may be relevant to a motion for summary judgment at a later date, but the Court will not rule on a claim for fraud as a matter of law until discovery has completed.   Therefore, the Court likewise **DENIES** Defendant's alternative Motion for Summary Judgment (ECF No. 275) as premature.

## IV.     Conclusion

Accordingly, the Court finds that Plaintiff has sufficiently pleaded a claim for fraudulent activity under the heightened standards in Federal Rule 9(b).   As the parties are still engaged in discovery, a motion for summary judgment at this time is premature.   Therefore, the Court **DENIES** Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 275).   As the Court did not require oral argument to decide this issue, the Motion for Oral Argument (ECF No. 277) is also **DENIED**.

---

who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity" (citations omitted)).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 16, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE

-13-